UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ELIZABETH N. HALSETH,

                Plaintiff,

     v.

B.C. TOWING, INC., et al.,

                Defendants.

No. CV 04-795-JE

OPINION AND ORDER

**MOSMAN, J.,**

In this employment case, Plaintiff Elizabeth Halseth asserts her employer, Defendant B.C. Towing, Inc. ("B.C. Towing"), and the company that contracted with her employer to perform human resources functions, Defendant TNT Management Resources, Inc. ("TNT"), failed to respond to her complaints of sexual harassment and retaliation. The parties filed cross motions for summary judgment. In support of its motion (#43), TNT's principal argument is that it cannot be liable because it was not Ms. Halseth's employer. A non-employer may be found liable for a negligence claim brought by an employee where there is evidence that the non-employer failed to respond to an employee's complaints about harassment and retaliation, and had some obligation to do so. Because I find there are sufficient disputed material facts as to TNT's duty to respond in this case, I ADOPT the Magistrate Judge Jelderks' Findings &

PAGE 1 - OPINION AND ORDER

Recommendation ("F&R") (#87) with the following modifications.

## BACKGROUND

Ms. Halseth filed this employment-related action against her former employer B.C. Towing, her alleged "co-employer" TNT, and two individual co-workers, Tommy Garner and Kevin Stutrud. A default order was entered against defendant Garner.

B.C. Towing is a tow truck operator with drivers on-duty 24 hours a day. B.C. Towing hired Ms. Halseth in February 2003 to be a dispatcher. At that time she was also identified as a "co-employee" of a worker-leasing company, eventually known as TNT. TNT performed various administrative functions for B.C. Towing, including "human resources functions." Within the first six weeks of her employment, Ms. Halseth complained to B.C. Towing of an employee brushing up against her and making her uncomfortable. Beginning in late March or April, Ms. Halseth claims she was sexually harassed by Defendants Stutrud and Garner. She reported instances of harassment in June or July to B.C. Towing. Thereafter, and apparently in response to Ms. Halseth's sexual harassment complaints, B.C. Towing held sexual harassment training for all of its employees on or about July 31 and August 8.

At the suggestion of B.C. Towing, on August 6, Ms. Halseth met with two members of TNT management to discuss the nature of her alleged harassment and the steps B.C. Towing had taken to resolve the situation. During this meeting, TNT gave Ms. Halseth a business card and said if she had any further problems to contact them. Ms. Halseth claims she tried to contact TNT on two subsequent occasions without success. On September 15, Ms. Halseth alleges she was constructively terminated from B.C. Towing because of the continuing sexually harassing and retaliatory environment.

Ms. Halseth moved for summary judgment (#38) on B.C. Towing's affirmative *Ellerth-Faragher* defense, as well as on her assertion that an unnamed co-worker, Brad Tuttle, was B.C. Towing's agent. B.C. Towing moved for summary judgment (#45) on all of Ms. Halseth's claims. TNT moved for summary judgment (#43) on the sole claim asserted against it– negligence. Defendants B.C. Towing, TNT, and Mr. Stutrud also collectively moved for leave to file an amended answer asserting the affirmative defense based upon the *Ellerth-Faragher* doctrine (#44).

Upon review of the parties' motions, Judge Jelderks recommended that (1) Ms. Halseth's motion be granted in part and denied in part, (2) B.C. Towing's motion be granted in part and denied in part, (3) TNT's motion be granted, and (4) defendants' motion to amend be granted. Ms. Halseth filed a timely objection, challenging only the recommendation that TNT's motion be granted. On this issue, Judge Jelderks concluded that only employers are liable for sexual harassment, and therefore, because TNT was not Ms. Halseth's employer it could not be held liable. Alternatively, he concluded that under *Fazzolari v. Portland School District No. 1J*, 734 P.2d 1326 (Or. 1987) and *Buchler v. Oregon Corrections Division*, 853 P.2d 798 (Or. 1993), TNT did not have a relationship with Ms. Halseth creating a duty, the breach of which could support a negligence claim.

## DISCUSSION

### I. Joint Employer

Ms. Halseth does not affirmatively argue TNT was her joint employer; however, the alleged facts give pause to consider this issue. It is undisputed TNT and B.C. Towing had a relationship whereby TNT provided certain administrative services to B.C. Towing, and TNT

PAGE 3 - OPINION AND ORDER

categorized itself as a worker leasing company. Oregon courts apply the "right to control" test to determine whether an individual is an employee of a particular employer in order to impose liability. *Castle Homes, Inc. v. Whaite*, 769 P.2d 215, 216 (Or. Ct. App. 1989). The factors in this test are: "(1) direct evidence of the right to or the exercise of control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire." *Id.*

Here, there is no evidence that TNT controlled Ms. Halseth's employment at B.C. Towing. There is also no evidence they could hire, fire, or supervise her activities. While the facts indicate TNT did become involved in the human resources issues raised by Ms. Halseth, they do not support a finding that TNT was exercising the requisite amount of control over her compensation, hours, or terms of employment to deem it a joint employer. As such, I agree with the F&R's conclusion that TNT did not engage in the requisite amount of control over Ms. Halseth to properly be considered her joint employer.

## II. Negligence

Under Oregon law, there are two separate bases for holding a defendant liable for common law negligence: (1) there existed "a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty," the breach of which is actionable, or (2) the defendant's conduct "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff" (general foreseeability). *Fazzolari,* 734 P.2d at 1336.

The F&R, citing *Fazzolari* and *Buchler*, explains that even if TNT had the obligation to accept and respond to complaints of sexually harassing conduct, that obligation did not arise from TNT's relationship with Ms. Halseth, but from its contractual relationship with B.C. Towing. The F&R concludes that TNT's breach of that obligation might give rise to a breach of

contract claim by B.C. Towing, but TNT did not have a relationship with Ms. Halseth that created a duty relevant to the negligence analysis. For purposes of this opinion, I accept the magistrate's finding that TNT did not have any initial obligation to accept and respond to Ms. Halseth's complaints of sexually harassing conduct. That is, there was no special status or relationship of a kind that would impose a duty on TNT. However, the F&R did not discuss whether, under the general foreseeability standard, TNT's actual involvement with Ms. Halseth's human resources issues created a foreseeable risk to a protected interest of the kind that befell Ms. Halseth.

To establish liability under the general foreseeability standard, the plaintiff's complaint "'must allege facts from which a factfinder could determine (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.'" *Slogowski v. Lyness*, 927 P.2d 587, 589 (Or. 1996) (quoting *Solberg v. Johnson*, 760 P.2d 867, 870 (Or. 1988)). For a non-employer defendant to be held liable to the employee for common law negligence, the employee must demonstrate the defendant has some responsibility for "the event" that caused the employee's injury. *See Fortney v. Crawford Door Sales Corp.*, 775 P.2d 910, 911-12 (Or. Ct. App. 1989); *see also Boothby v. D.R. Johnson Lumber Co.*, 55 P.3d 1113, 1125 (Or. Ct. App. 2002) (construing *Fortney*).

In *Quackenbush v. Portland General Electric Co.*, 894 P.2d 535 (Or. Ct. App. 1995), the plaintiffs were the survivors and estate of an employee of Pruett, a tree pruning company. The

PAGE 5 - OPINION AND ORDER

plaintiffs sued PGE for (among other things) common law negligence. *Id.* at 537. Pruett was hired by a homeowner to trim certain trees on the owner's property. *Id.* One of the owner's trees had a power line running through its branches, and Pruett contacted PGE and requested that PGE trim the tree away from the power line. *Id.* PGE's contractor trimmed the tree away from the power line, and told Pruett the tree was safe for Pruett's employees to conduct ornamental tree trimming. *Id.* at 539. Thereafter, the decedent was electrocuted when he came into contact with an electrical line while trimming the tree. *Id.* at 537. The trial court granted PGE's motion for summary judgment as to plaintiffs' common law negligence cause of action. *Id.*

Not finding any special duty between the parties, the Oregon Court of Appeals undertook the analysis of whether PGE could be found liable under general foreseeability: "If PGE undertook to assist Pruett in making the tree safe for Pruett's employees, then the law of negligence requires it to perform that task with reasonable care consistent with the scope of its understanding with Pruett and in so doing, to avoid any foreseeable risk of harm to Pruett's employees." *Id*. at 539-40. The court found that the evidence created an issue of material fact "about whether PGE assumed the responsibility to make the tree safe for Pruett's employees and whether it acted reasonably in carrying out that responsibility." *Id*. at 540. PGE was a non-employer that the court held could be deemed liable in common law negligence for plaintiff's injuries, as long as it had some responsibility for the event that caused those injuries. *Id.*

In *Slogowski*, defendant, an easement holder, undertook the responsibility to inspect the trees along its right-of-way, and to remove trees with hazardous defects. 927 P.2d at 588. A tree within the right-of-way fell on a car driven by plaintiff's wife, injuring plaintiff's wife and one child and killing plaintiff's three other children. *Id.* The Oregon Supreme Court concluded that

PAGE 6 - OPINION AND ORDER

plaintiff's complaint alleging negligence was sufficient to withstand defendant's motion for a judgment on the pleadings. *Id.* at 590. The plaintiff adequately alleged the poor condition of the tree was discoverable to the easement holder, and that it was foreseeable the tree could fall onto the roadway. *Id.* The court explained that "[o]nce having undertaken the responsibility to perform a task, a party must act reasonably in the exercise of that task." *Id.* (citing *Laubach v. Indus. Indem. Co.*, 593 P.2d 1146, 1149-50 (Or. 1979)).

Similarly, here there are issues of material fact as to whether TNT undertook responsibilities to resolve Ms. Halseth's complaint of harassment and to prevent the conduct allegedly resulting in her claim for wrongful constructive termination. B.C. Towing advised Ms. Halseth to speak with TNT concerning her human resources issues, and TNT indicated it would like to speak with Ms. Halseth. (Asher Depo. at pp. 95-96). B.C. Towing informed its employees that reporting harassment to TNT was an appropriate means of complying with B.C. Towing's harassment policy. (*Id.* at 107-09). The owners of TNT admit they voluntarily spoke to Ms. Halseth about human resources issues, including harassment, and attempted to resolve any outstanding problems, and that they provided Ms. Halseth with a business card so that if she had additional problems she could contact them. (T. Blubaugh Depo. at pp. 34-42, pp. 52-53, line 4; J. Blubaugh Depo. at pp.10-11). The owners of TNT thereafter spoke with B.C. Towing about their conversation with Ms. Halseth. (T. Blubaugh Depo. at pp. 45-53). These facts demonstrate there is a genuine issue of material fact as to whether TNT undertook the responsibility of performing a task, namely to alleviate current harassment and retaliation allegations, and to respond adequately to any future harassment or retaliation allegations from Ms. Halseth, sufficient to create a reasonably foreseeable risk to Ms. Halseth if TNT did not

perform this task.

## CONCLUSION

TNT's motion for summary judgment (# 43) is DENIED, and I otherwise ADOPT the F&R with this MODIFICATION.

IT IS SO ORDERED.

DATED this 3rd day of February, 2006.

                                       /s/ Michael W. Mosman
                                       MICHAEL W. MOSMAN
                                       United States District Court